**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

EROAD LIMITED and EROAD INC.,

                Plaintiffs,

     v.

PERDIEMCO, LLC,

                Defendant.

Civil Action No. 6:19-CV-00026-ADA

**<u>EROAD'S OPPOSITION TO PERDIEMCO'S RULE 12(B)(3) MOTION TO TRANSFER
FOR IMPROPER VENUE</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT FACTUAL BACKGROUND .......................................................... 2

III.   APPLICABLE LAW .......................................................................................... 5

IV.   ARGUMENT ...................................................................................................... 8

      A.      This Case Cannot Be Transferred Under § 1406(a) Because Venue Is Proper In This District ............................................................................... 8

      B.      PDC Has Not Met Its Burden of Proving That The Eastern District Is Clearly More Convenient Than This District Under § 1404(a) ................. 12

      C.      Alternatively, If the Court Deems Transfer Appropriate, It Should Transfer to the District Court for the District of Columbia ....................... 17

V.     CONCLUSION ................................................................................................... 17

i

# TABLE OF AUTHORITIES

## CASES

*1-Stop Fin. Serv. Centers of Am., LLC v. Astonish Results, LLC*,
   No. 2014 WL 279669 (W.D. Tex. Jan. 23, 2014)........................................................5

*21st Century Fin. Servs., LLC v. Manchester Fin. Bank*,
   2012 WL 12883044 (W.D. Tex. June 29, 2012) ...................................................12

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
   2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) .........................................................6

*Bradford v. Telerecovery*,
   2017 WL 2573947 (E.D. La. June 14, 2017) ...........................................................6

*Bustos v. Lennon*,
   2012 WL 12882897 (W.D. Tex. May 18, 2012) .................................................6, 8, 9

*Carruth v. Michot*,
   2015 WL 6506550 (W.D. Tex. Oct. 26, 2015)..........................................1, 3, 6, 8

*City of El Cenizo v. Texas*,
   2017 WL 6402990 (W.D. Tex. Aug. 15, 2017)........................................................12

*Davidson v. Ascension Health Long Term Disability Plan*,
   2017 WL 8640929 (W.D. Tex. Feb. 1, 2017)..........................................................14

*Dillard v. Fed. Corp.*,
   321 F. Supp. 3d 752 (W.D. Tex. 2018)......................................................................6

*Fielding v. Hubert Burda Media, Inc.*,
   415 F.3d 419, 429 (5th Cir. 2005) ...........................................................................11

*Gesco Int'l Inc. v. Luther Med. Prod. Inc.*,
   1990 WL 505456 (W.D. Tex. June 26, 1990) ...........................................................9

*Guitar Holding Co. v. El Paso Nat. Gas Co.*,
   2010 WL 3338550 (W.D. Tex. Aug. 18, 2010)........................................................12

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1974)...................................................................................................7

*Healthpoint, Ltd. v. Derma Scis., Inc.*,
   939 F. Supp. 2d 680 (W.D. Tex. 2013).......................................................................7

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010)..............................................................................................11, 13

*In re Atl. Marine Constr. Co.*,
   2012 WL 5835832 (5th Cir. Nov. 19, 2012)..............................................................8

*In re BigCommerce, Inc.*,
  890 F.3d 978 (Fed. Cir. 2018)................................................................................10

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011)........................................................................11, 13

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) .............................................................................7, 12

*Lowe v. MAC Fed. Credit Union*,
  2018 WL 2422999 (W.D. Tex. May 29, 2018) ...................................................6, 8

*Munro v. Lucy Activewar, Inc.*,
  2016 WL 4257750 (W.D. Tex. Jan. 14, 2016) .......................................................8

*Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*,
  500 F. Supp. 2d 680 (W.D. Tex. 2007)............................................................1, 9, 12

*Stagecoach Puttters, LLC v. Taylor Made Golf Co., Inc.*,
  2015 WL 11622483 (W.D. Tex. Jan. 26, 2015) .....................................................7

*Steadfast Ins. Co. v. Busick Properties*,
  2007 WL 9710272 (W.D. Tex. Oct. 9, 2007) .........................................................5

*Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enterprises, Inc.*,
  2018 WL 6050603 (W.D. Tex. Nov. 19, 2018) .....................................................10

*Transamerica Adjusters, Inc. v. Huntington Nat'l Bank*,
  2014 WL 12685938 (E.D. Tex. Aug. 5, 2014) .....................................................6, 8

*Truelove v. Texas Dep't of Criminal Justice*,
  2019 WL 422661 (W.D. Tex. Feb. 3, 2019) ........................................................14

*Vasquez v. El Paso II Enterprises, LLC*,
  912 F. Supp. 2d 445 (W.D. Tex. 2012)..................................................................7

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
  2018 WL 5315206 (E.D. Tex. Oct. 26, 2018) .......................................................10

*Wenche Siemer v. Learjet Acquisition Corp.*,
  966 F.2d 179, 182-83 (5th Cir. 1992) ..................................................................11

## STATUTES AND RULES

28 U.S.C. § 1391....................................................................................... *passim*

28 U.S.C. § 1391(a) ...........................................................................................5

28 U.S.C. § 1391(b)(1) ..................................................................................6, 8, 9

28 U.S.C. § 1391(c) .........................................................................................6, 9

28 U.S.C. § 1391(d) ......................................................................................6, 8, 9

28 U.S.C. § 1400(b) ........................................................................................................9, 10

28 U.S.C. § 1404 ....................................................................................................................5

28 U.S.C. § 1404(a) .......................................................................................................2, 7, 12

28 U.S.C. § 1406(a) ......................................................................................................5, 8, 10

Rule 12(b)(3) ..................................................................................................................1, 4, 5

## I.    INTRODUCTION

Washington D.C. resident Robert Babayi started Defendant PerDiemCo, LLC ("PDC") with two Alabama residents in 2015. At least as early as July 2018, Mr. Babayi acquired 100% ownership of PDC and took over as its CEO. Since that time, he has spearheaded PDC's latest round of patent licensing efforts, targeting 10-12 companies alleged to infringe PDC's patents, including Plaintiffs EROAD Limited and EROAD Inc. (collectively, "EROAD"). In support of PDC's Rule 12(b)(3) Motion to Transfer for Improper Venue ("PDC's Motion" or "Motion"), Mr. Babayi submitted a sworn declaration, which represented to the Court that "PerDiemCo's business is conducted primarily out of its main business office" in Marshall, Texas. Few things could be further from the truth. He conducted the licensing efforts from his home/office in Washington D.C., and development of PDC's purported product occurred in Alabama. The Marshall office appears not to have been used in many months, and Mr. Babayi has never been there. In fact, at the time of his deposition two weeks ago, Mr. Babayi – PDC's CEO and sole owner, responsible for negotiating licenses to PDC's patents – had ***never set foot in the Eastern District of Texas***.

PDC's lack of relevant contact with the proposed transferee district is just one of several reasons that PDC's Motion should be denied. First, venue is proper in this District. PDC is a Texas LLC, formed in the Western District, and therefore resides in this district. *See Carruth v. Michot*, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015). As such, venue is proper under the general venue statute, 28 U.S.C. § 1391. *See Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 500 F. Supp. 2d 680, 682 (W.D. Tex. 2007). PDC's arguments to the contrary carry no weight, as they rely on cases addressing a materially different statute or materially different factual scenarios.

PDC likewise fails to establish that the convenience factors clearly weigh in favor of transfer under § 1404(a). As noted above, PDC's argument concerning its Marshall "office" is based on an overstatement. In addition, although PDC contends that the Eastern District is familiar with the patents at issue here because the terms of some patents in the same family were construed there, only three of the eleven patents at issue in this case have been "litigated" at all in the Eastern District. Those patents were at issue in only two cases that were dismissed well before the court was able to address claim construction. No claims of the patents at issue here have undergone claim construction in the Eastern District. PDC identifies no witnesses or documents located in the Eastern District, or any other private or public interest factor weighing in favor of transfer. The fact that some patents in the same family as the patents at issue here have been litigated in the Eastern District is insufficient to overcome the deference accorded to plaintiff's choice of forum and show that the Eastern District is clearly more convenient.

The Court should therefore deny PDC's motion on all grounds. To the extent the Court deems that transfer is appropriate, the Court should, in the alternative, transfer this case to the District Court for the District of Columbia, the forum where PDC's sole owner resides, where he directs and controls PDC's activities, including the communications with EROAD that led to this litigation, and where PDC maintains an office with relevant documents.

## II.     RELEVANT FACTUAL BACKGROUND

PDC is a Texas limited liability company. Dkt. No. 12 at 1. Its Certificate of Formation was filed with the Secretary of State's office in Austin on April 13, 2015. Ex. A. In its taxation submissions for 2016, 2017, and 2018 (also filed in Austin), it identifies a "principal place of business" in Alabama. Exs. B, C, D. Not until March 4, 2019, after this action was filed, did PDC submit anything to the State of Texas identifying an address or principal place of business

in the Eastern District. Ex. J. The Texas Secretary of State's website identified Mr. Babayi's Washington D.C. home/office address as PDC's address even after PDC filed its Motion. Ex. E.

PDC was formed in the Western District as an LLC with three members: Mr. Babayi, Mark Roberts, and Darryl Diem. Ex. A; Ex. F at 100:15-102:9. Mr. Roberts resides in Huntsville, Alabama, and Mr. Diem resides in Madison, Alabama. Ex. F at 93:16-19, 35:13-18. When all three were owners of PDC, corporate meetings were conducted from Washington D.C. or Alabama. *Id*. at 34:12-39:7. Mr. Babayi is unaware of any corporate meetings conducted in the Eastern District of Texas. *Id*. at 34:12-39:7. By early summer 2018, both Mr. Roberts and Mr. Diem sold all their shares to Mr. Babayi, making him PDC's sole owner. *Id*. at 115:6-117:12.

This declaratory judgment action arises from PDC's repeated threats of litigation against EROAD as part of PDC's patent licensing efforts targeting 10-12 companies. Ex. F at 59:2-5. On July 12, 2018, PDC's outside counsel sent a letter to EROAD's CEO accusing EROAD of infringing PDC's patents and threatening to seek damages. Dkt. No. 12-3. Mr. Babayi continued the threats of litigation in subsequent emails and telephonic communications with EROAD's counsel. Ex. F at 54:20-64:21. Mr. Babayi conducted each of these communications from the Washington D.C. area. *Id*. None were conducted in or from the Eastern District of Texas. *Id*. Beginning at least as early as July 2018, Mr. Babayi was directing other litigation campaigns, one of which began with him sending a demand letter to a subsidiary of Trimble Inc. Ex. F at 54:20-64:21; Ex. G. As shown below, the letter, bearing PDC's letterhead, identified his Washington D.C. home/office address as PDC's address, and his Virginia cell phone number as PDC's phone number. *Id.*



**PERDIEMCO, LLC**

**WWW.PERDIEMCO**

FROM: ROBERT S. BABAYI, PATENT ATTORNEY
CHIEF EXECUTIVE OFFICER
3208 Q ST. NW WASHINGTON, DC 20007
E-MAIL: ROBERT@PERDIEMCO.COM
PHONE: 703-587-3803

EROAD filed its Complaint for Declaratory Judgment on January 25, 2019. Dkt. No. 1. In response, PDC filed a Rule 12(b)(3) Motion to Transfer on March 22, 2019. Dkt. No. 12. The Motion asserts that PDC's principal place of business is located at 505 E Travis Street, Suite 205, Marshall, Texas, in the Eastern District. Dkt. No. 12 at 1, 5, 11. Mr. Babayi's declaration purports to support this assertion, stating under oath that "PerDiemCo's business is conducted primarily out of" that "main business office." Dkt. No. 12-1 at ¶ 6.

Notwithstanding that representation, Mr. Babayi testified in his deposition that he has never been to PDC's Marshall, Texas office. Ex. F, Depo Tr. at 96:2-98:19. In fact, Mr. Babayi has never been to the Eastern District of Texas. *Id*. No one else associated with PDC appears to have been in that office in many months either, likely since PDC completed its previous Eastern District litigation in Spring 2018. *Id.* at 27:7-29:15. According to at least one tenant in the building, PDC's purported office has not been used for months. Declaration of Michael J. Collins ("Collins Decl.") at ¶ 6. A private investigator hired by EROAD's counsel observed that the office was vacant on consecutive weekdays, with a package under the door and a business card sticking out of the door both days. Collins Decl. at ¶ 4, 7. Upon contacting the person listed on the business card, the investigator learned that the card had been left more than six months ago— in September 2018. Collins Decl. at ¶ 9.

Although PDC's website lists a Marshall, Texas telephone number for the company, that number is currently assigned to a cell phone that Mr. Babayi keeps with him in Washington D.C.

Ex. F at 66:15-67:21. That cell phone appears seldom, if ever, to have been used for PDC's business. *Id.* at 79:12-87:15. Mr. Babayi testified that when the phone rings, it typically is a telemarketing call, and his only recollection of placing an outgoing call on the phone was to try to call his personal cell phone to locate it. *Id*. Even when the Marshall phone number was previously assigned to a land line in the Marshall office, Mr. Babayi believes the line was forwarded either to his cell phone or to the cell phone of one of the Alabama-based co-founders. *Id.* at 71:2-72:9.

PDC has never had any employees in the Eastern District of Texas. *Id.* at 7:4-10. Nor have any contractors retained by PDC been based in that district. *See id*. at 43:15-44:23. PDC does not contend that any documents are maintained in the Eastern District. *See* Dkt. No. 12. PDC has not developed any products in the Eastern District. Ex. F at 27:7-28:6. PDC's only purported product is an app that was developed in Alabama, and that does not appear to have been updated since 2015. *Id.* at 27:7-28:6, 16:10-18:13; Ex. H.

## III.    APPLICABLE LAW

28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A court therefore cannot transfer a case under § 1406 unless the plaintiff filed in the wrong venue. *Steadfast Ins. Co. v. Busick Properties*, 2007 WL 9710272, at *1–2 (W.D. Tex. Oct. 9, 2007) (citing *Accord Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001) ("[a] transfer for improper venue comes under § 1406(a)," not 28 U.S.C. § 1404)). Whether venue is "wrong" or "improper" for purposes of § 1406(a) and Rule 12(b)(3) is generally governed by 28 U.S.C. § 1391. *1-Stop Fin. Serv. Centers of Am., LLC v. Astonish Results, LLC*, No. 2014 WL 279669, at *3 (W.D. Tex. Jan. 23, 2014); 28 U.S.C. § 1391(a) ("Except as

otherwise provided for by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States.").

Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district where any defendant resides." An entity with the capacity to sue or be sued in its common name, such as an LLC, resides "in **any** judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (emphasis added). An LLC is "deemed to reside in **any** district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state." 28 U.S.C. § 1391(d); *Transamerica Adjusters, Inc. v. Huntington Nat'l Bank*, 2014 WL 12685938, at *3 (E.D. Tex. Aug. 5, 2014) (holding that § 1391(d) applies to LLCs).

A corporate defendant is "necessarily" subject to personal jurisdiction "in its place of incorporation." *Dillard v. Fed. Corp.*, 321 F. Supp. 3d 752, 755 (W.D. Tex. 2018); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, 2016 WL 6909479, at *4 (W.D. Tex. Jan. 28, 2016) ("The defendant resides where the company is incorporated or its principal place of business."). Indeed, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'; they are unique and easily ascertainable, and afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Lowe v. MAC Fed. Credit Union*, 2018 WL 2422999, at *2 (W.D. Tex. May 29, 2018). Likewise, an LLC is necessarily subject to personal jurisdiction in the place it is formed. *Carruth*, 2015 WL 6506550, at *7; *Bustos v. Lennon*, 2012 WL 12882897, at *5 (W.D. Tex. May 18, 2012); *Bradford v. Telerecovery*, 2017 WL 2573947, at *4 (E.D. La. June 14, 2017) ("an LLC is subject to personal jurisdiction in the state where it was formed").

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In deciding whether to transfer a case under § 1404(a), the Court weighs the parties' private interests in convenience and the public interest in the fair administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 684–85 (W.D. Tex. 2013); *Vasquez v. El Paso II Enterprises, LLC*, 912 F. Supp. 2d 445, 447 (W.D. Tex. 2012). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. It is the moving party's burden to "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008). A plaintiff's selection of venue is entitled to deference. *Vasquez v. El Paso II Enterprises, LLC*, 912 F. Supp. 2d 445, 447 (W.D. Tex. 2012) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir 2008) ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.")); *Stagecoach Puttters, LLC v. Taylor Made Golf Co., Inc.,* 2015 WL 11622483, at *2 (W.D. Tex. Jan. 26, 2015) (plaintiff's choice of forum is given "great deference").

## IV.   ARGUMENT

### A.   This Case Cannot Be Transferred Under § 1406(a) Because Venue Is Proper In This District

The Court cannot transfer this case under § 1406(a) because the Western District is a proper venue for this case. 28 U.S.C. § 1406(a). PDC cannot succeed on a § 1406(a) motion to transfer unless it can establish that EROAD brought suit in an improper venue. *In re Atl. Marine Constr. Co.*, 2012 WL 5835832, at *2 (5th Cir. Nov. 19, 2012) (§ 1406(a) provides for "transfer of an action that has been brought in an improper venue"). 28 U.S.C. § 1391 governs whether venue is proper in this district. Under § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. Section 1391(c)(2) provides that an entity is deemed to reside in "***any*** judicial district" where it is subject to personal jurisdiction. *Id.* (emphasis added); *Munro v. Lucy Activewear, Inc.*, 2016 WL 4257750, at *5 (W.D. Tex. Jan. 14, 2016). Likewise, under § 1391(d), a corporation or LLC in a multi-district state is "deemed to reside in ***any*** district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." (emphasis added); *Transamerica Adjusters, Inc. v. Huntington Nat'l Bank*, 2014 WL 12685938, at *3 (E.D. Tex. Aug. 5, 2014).

Venue is proper in this district under §§ 1391(b)(1), 1391(c)(2) and 1391(d). PDC is an LLC formed in this district. Ex. A; Ex. F at 100:15-102:9. It is organized under the laws of Texas and purposefully availed itself of the protections of the laws of this state and district. *Id.* Just as a corporation is subject to personal jurisdiction in its state of incorporation, an LLC is subject to personal jurisdiction in its state of formation. *Lowe v. MAC Fed. Credit Union*, 2018 WL 2422999, at *2 (W.D. Tex. May 29, 2018); *Carruth*, 2015 WL 6506550, at *7 (W.D. Tex. Oct. 26, 2015); *Bustos*, 2012 WL 12882897, at *5 (W.D. Tex. May 18, 2012). Indeed, the place

where the LLC is formed is a "paradig[m] . . . bas[i]s for general jurisdiction." *Id*. Thus, under § 1391(d), PDC would be subject "to personal jurisdiction if [this] district were a separate State." Moreover, under §§ 1391(b)(1) and 1391(c)(2), PDC "resides" in this this district. Venue is, therefore, proper in this district. *See Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 500 F. Supp. 2d 680, 682 (W.D. Tex. 2007) ("[T]he Court finds that venue in the Western District of Texas is permissible under 28 U.S.C. § 1391, as Defendant is properly subject to personal jurisdiction in the Western District of Texas.").

PDC cannot show that venue is improper in this district under the applicable general venue statute—§ 1391. *See* Dkt. No. 12 at 6 (PDC concedes that the present "action for declaratory judgment alleging non-infringement is governed by the general venue statute, 28 U.S.C. § 1391."). Instead, PDC's argument centers on a different statute—28 U.S.C. § 1400(b). § 1400(b) is a patent infringement-specific venue statute which provides that a "civil action *for patent infringement* may be brought in *the* judicial district where the defendant resides." (emphasis added). Section 1400(b) is limited to affirmative claims for patent infringement and does not apply to actions such as this one, where the claim is for declaratory judgment. *Gesco Int'l Inc. v. Luther Med. Prod. In*c., 1990 WL 505456, at *2 (W.D. Tex. June 26, 1990). The general venue statute applicable here, § 1391, more broadly provides that venue is proper in *any* district in which a defendant resides. *See* § 1391(c)(2) ("an entity . . . shall be deemed to reside, if a defendant, in *any* judicial district in which such defendant is subject to the court's personal jurisdiction) (emphasis added); *see also* § 1391(d) (a corporation is "deemed to reside in *any* district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State.") (emphasis added); *see also* § 1391(b)(1) (venue is proper in "*a* judicial district in which *any* defendant resides") (emphasis added).

Unable to show why it does not reside in the Western District under § 1391 despite being formed in this district, PDC contends that incorporation in a state comprising multiple districts does not establish venue in every district of the state under § 1400(b). *Id.* at 7-8. PDC cites *In re BigCommerce, Inc.* as support. *Id.* (citing 890 F.3d 978 (Fed. Cir. 2018)). But *BigCommerce* appropriately distinguishes the patent venue statute, which limits proper venue to a *single* district, from the general venue statute, which provides that venue may be proper in *multiple* districts. *In re BigCommerce, Inc.*, 890 F.3d 978, 984 (Fed. Cir. 2018) ("It is also evident from the general venue rules at the time that when Congress wanted venue to potentially lie in multiple judicial districts, it said so clearly. . . . The lack of similar language in § 1400(b) indicates that Congress did not intend for residence to include all judicial districts."). Further, *BigCommerce* limits its analysis to the question of whether incorporation in a state confers venue in *every* district of the state under § 1400(b), explaining that it does not because § 1400(b) provides proper venue in a single district – i.e., "the" district. *Id.* at 979. This is a separate question from the issue here. EROAD does not necessarily contend that venue is proper under § 1391 in *every* district in Texas because PDC is incorporated in Texas. Rather, EROAD explains that venue is proper in *this district* because PDC was formed by filing with the Secretary of State in *this district*. Venue under § 1391 may also be proper in other districts, because unlike § 1400(b), § 1391 does not restrict proper venue to a single district. But for the purposes of § 1406(a), the threshold question is whether venue is proper in this district, which it is.

Even if §1400(b) did apply to the question of propriety of venue, which it does not, the facts here would not support transfer. The relevant time for any venue analysis is the time of filing of the complaint. *Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enterprises, Inc.*, 2018 WL 6050603, at *2 (W.D. Tex. Nov. 19, 2018); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*,

2018 WL 5315206, at *2 (E.D. Tex. Oct. 26, 2018). At the time EROAD filed its complaint, PDC

had made no use of the Marshall office in many months. Collins Decl. at ¶ 4, 6, 9; Ex. F 96:2-

98:19. Instead, Mr. Babayi was conducting the company's business from his home/office in

Washington D.C. Ex. F at 54:20-64:21. The Marshall office, by contrast, was at best a sham,

established in an attempt to create venue for litigation. Such a use does not support an attempt to

transfer venue. *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *Hertz Corp. v.

Friend*, 559 U.S. 77, 97 (2010).

      PDC's next argument misleadingly states that the company's "sole connection with this

District is that its registered agent for service of process is located in Austin, a division of this

District." Dkt. No. 12 at 9. PDC omits that it is also a Texas LLC formed by filing with the

Secretary of State in this district. Rather than addressing this dispositive fact head on, PDC

contends that "designation of an agent for service of process and registration to do business in

the State of Texas alone, without more, does not satisfy the constitutional requirements for

establishing personal jurisdiction over a defendant." *Id.* PDC cites two Fifth Circuit cases in

support of this contention, both of which are distinguishable from the facts here.

      In *Fielding v. Hubert Burda Media, Inc.*, the Court of Appeals rejected appellants'

argument that a German corporation with its principal place of business in Germany was subject

to general jurisdiction in Texas based solely on the fact that its subsidiary had a registered agent

capable of receiving process in Texas. 415 F.3d 419, 429 (5th Cir. 2005). In *Wenche Siemer v.

Learjet Acquisition Corp.*, the Court of Appeals rejected appellants' argument that a Delaware

corporation with its principal place of business in Kansas was subject to general jurisdiction in

Texas based solely on the fact that it registered an agent for service of process in Texas. 966 F.2d

179, 182-83 (5th Cir. 1992). In contrast to these cases, PDC is not a foreign defendant with its

sole connection to this district being a registered agent for service of process. PDC is a Texas LLC formed in this district, which also has a registered agent for service of process in this district. Ex. A. Venue is therefore proper in this district. *See Seeberger Enterprises, Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 500 F. Supp. 2d 680, 682 (W.D. Tex. 2007); *see also City of El Cenizo v. Texas*, 2017 WL 6402990, at *1–2 (W.D. Tex. Aug. 15, 2017).

> **B.    PDC Has Not Met Its Burden of Proving That The Eastern District Is Clearly More Convenient Than This District Under § 1404(a)**

PDC's alternative request for transfer under § 1404(a) should also be denied because PDC cannot show that the Eastern District is ***clearly*** more convenient than this district as required for such transfers. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."); *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 2012 WL 12883044, at *1 (W.D. Tex. June 29, 2012) ("Courts generally give great deference to the plaintiff's choice of forum").

The private interest factors do not weigh in favor of transfer. PDC alleges that its "principal place of business is in Marshall, Texas, in the Eastern District." Dkt. No. 12 at 11. But as discussed above, it is not. A company's principal place of business is located at its "nerve center"—the place where its "officers direct, control and coordinate" its activities. *Guitar Holding Co. v. El Paso Nat. Gas Co.*, 2010 WL 3338550, at *3–6 (W.D. Tex. Aug. 18, 2010) (citing *Hertz Corp. v. Friend*).

Mr. Babayi, PDC's CEO and sole owner, has ***never been to the Marshall, Texas office*** that PDC purports to be its principal place of business. Depo. Tr. at 96:2-97:19. Indeed, as mentioned, Mr. Babayi has ***never even been to the Eastern District of Texas***. *Id*. The office PDC purports to be its principal place of business is a single room in a building it leases in an attempt

to manufacture a presence in the Eastern District. Collins Decl. at ¶ 4, 6, 7; Ex. F at 16-18. The suite does not appear to be a legitimate office, and is regularly vacant. *Id*. Such a facility cannot be used to support transfer. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (offices that "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue" does not factor into transfer analysis); *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (party cannot manipulate venue by relying on a purported principal place of business that is "a bare office with a computer").

PDC has not identified any employees or witnesses residing in the Eastern District or for whom the Eastern District would be more convenient than this district. Mr. Babayi resides in Washington D.C. Ex. F at 5:15-17. Mr. Babayi directs, controls, and coordinates PDC's activities from his Washington D.C. home/office, and communicates with approximately a dozen licensing targets, including EROAD, from there. *Id.* at 54:20-64:21; Ex. G. Mr. Babayi's home address was also a registered PDC address at the time this suit began. Ex. F at 5:15-17; Ex. E. Both of PDC's former co-owners, whom Mr. Babayi alleges still work in a consulting role for PDC, reside in Alabama, worked on developing PDC's sole "product" there, and have not done any recent work in the Eastern District of Texas. Ex. F at 93:16-19, 35:13-18. PDC does not appear to have any other employees. *Id*. at 7:5-23. Thus, the convenience of witnesses and ease of access to sources of proof is neutral.

None of the public interest factors weighs in favor of transfer. Court congestion in this district and the Eastern District is relatively the same, and PDC does not contend that this factor weighs in favor of transfer. For the 12-month period ending December 31, 2018, the median time from filing to trial in this district was 20.4 months compared with 19.0 months in the Eastern District. Ex. I. The median time from filing to disposition during that period was 8.1 months in this

district and 8.9 months in the Eastern District. *Id*. During that same time period, the pending cases per judgeship in this district was 579 compared with 643 in the Eastern District. *Id*. As such, any administrative difficulties caused by court congestion are no less likely in the Eastern District than in this district. *See Davidson v. Ascension Health Long Term Disability Plan*, 2017 WL 8640929, at *9 (W.D. Tex. Feb. 1, 2017) (finding this factor neutral when one district had more case filings and the other had a shorter time to disposition).

The remaining public interest factors—the local interest in having localized interests decided at home, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws of the application of foreign law—also do not weigh in favor of transfer, nor does PDC contend that they do. *See Truelove v. Texas Dep't of Criminal Justice*, 2019 WL 422661, at *4 (W.D. Tex. Feb. 3, 2019) (finding the public interest factors neutral when neither party argued that they weighed in favor of transfer).

PDC contends instead that litigating in this district would "waste judicial resources" because the Eastern District has purportedly dealt with the patents at issue in this case in previous cases brought by PDC, none of which involved EROAD. Dkt. No. 12 at 17. But this argument is overstated. PDC's Motion extensively describes two previous litigations PDC filed in the Eastern District: *PerdiemCo LLC v. GPS Logic LLC*, No. 2:15-cv-1216 and *PerdiemCo, LLC. v. IndusTrack LLC*, No. 2:15-cv-00727. *Id.* at 11-17. PDC emphasizes that *GPS Logic* was litigated through expert reports and *IndusTrack* was litigated through selecting and seating a jury before it settled. *Id.* But the relevance of these two cases is limited. Although PDC concedes that "not every one of the specific patents at issue in this case was involved in the *GPS Logic and* [*sic*] *IndusTrack* suits," the fact is that ***none*** of the patents at issue in this case were at issue in those suits. Dkt. No. 12 at 14; *PerdiemCo LLC v. GPS Logic LLC*, No. 2:15-cv-1216, Dkt. No.

14; *PerdiemCo, LLC. v. IndusTrack LLC*, No. 2:15-cv-00727, Dkt. No. 1. Both suits involved six

asserted patents, and none of them is at issue in this case. *Id.*

To the extent that PDC has previously litigated any of the patents at issue in this case in

the Eastern District, such litigation was sharply limited, both temporally and in scope. Only two

Eastern District suits involved any of the patents asserted here. Both ended well before claim

construction, and together, they involved only three of the eleven patents at issue here. The '471

and '314 patents were at issue in *PerDiemCo LLC v. Geotab Inc. et al.*, No. 2-16-cv-01203,

which was dismissed with prejudice less than two months after it was filed. *PerDiemCo LLC v.*

*Geotab Inc. et al.*, No. 2-16-cv-01203, Dkt. No. 17. The '471, '314, and '113 patents were at

issue in *PerDiemCo LLC v. Telular Corp. et al.*, No. 2-16-cv-01408, which was dismissed with

prejudice after the case was stayed for seven months pending *inter partes* review ("IPR").

*PerDiemCo LLC v. Telular Corp. et al.*, No. 2-16-cv-01408, Dkt. No. 80. No claim of the patents

at issue in this case has been construed in the Eastern District. *See PerDiemCo LLC v. Geotab*

*Inc. et al.*, No. 2-16-cv-01203; *see also PerDiemCo LLC v. Telular Corp. et al.*, No. 2-16-cv-

01408. No expert reports for the patents at issue in this case have been exchanged in the Eastern

District. *Id*. Moreover, after EROAD filed its declaratory judgment complaint, PDC's counsel

informed EROAD's counsel that it does not intend to assert a claim alleging infringement of any

PDC patent that has been subject to an instituted IPR. Sacksteder Decl. at ₽ 13. The '471, '314,

and '113 patents all fall into that category and thus are unlikely to be at issue in this case going

forward. *See* IPR2017-00969, IPR2017-00968, and IPR2017-00973; Sacksteder Decl. at ₽ 13.

PDC cannot successfully support its motion based on prior litigations in the Eastern

District regarding patents in the same family as patents at issue here. *See Nova Nilla Entm't, LLC*

*v. Players Nightclub, LLC*, 2018 WL 4955221, at *7 (W.D. Tex. Oct. 12, 2018) (denying transfer

where all but one factor was neutral, and the factor slightly favoring transfer did not clearly weigh in favor of transfer). PDC contends that *Peak Completion Techs. Inc. v. I-TEC Well Sols., LLC* provides an example of the Court transferring a case to the Southern District that presided over a prior litigation involving the parent of the patent-at-issue. Dkt. No. 12 at 14-15 (citing 2013 WL 12121002, at *3 (W.D. Tex. June 26, 2013)). But PDC ignores that the Court transferred the *Peak* case because multiple "public– and private-interest factors weigh in favor of transfer[]." *Peak Completion Techs. Inc. v. I-TEC Well Sols., LLC*, 2013 WL 12121002, at *3 (W.D. Tex. June 26, 2013). There, defendant's principal place of business, majority of its witnesses, all of its relevant books and records, and accused infringing activity all took place in the Southern District. *Id.* Compared to its minimal contacts with the Western District, the Southern District was the more convenient forum for the defendant in the *Peak* case. *Id.* Here, by contrast, PDC has identified no factors weighing in favor of transfer beyond the fact that patents not at issue in this litigation were previously litigated in the Eastern District. To the extent this factor weighs in favor of transfer at all, which EROAD contends that it does not, it cannot overcome the deference accorded to Plaintiff's choice of forum in addressing whether the Eastern District is "clearly more convenient" than this district. *Permian Basin Petroleum Ass'n v. Dep't of the Interior*, 2015 WL 11622492, at *5 (W.D. Tex. Feb. 26, 2015) (where judicial economy was the only factor weighing in favor of transfer, "and the remaining factors are neutral, the Court finds Defendants have not shown good cause and the transferee venue is not clearly more convenient.").

In sum, PDC has failed to establish that the private and public interest factors clearly weigh in favor of transfer.

### C.   Alternatively, If the Court Deems Transfer Appropriate, It Should Transfer to the District Court for the District of Columbia

In the event the Court deems that transfer is appropriate, it should transfer this case to the United States District Court for the District of Columbia. PDC's principal place of business is in Washington D.C. Mr. Babayi, PDC's CEO and sole owner, resides in Washington D.C. Ex. F at 5:15-17. He directs, controls, and coordinates PDC's activities from his Washington D.C. address. *Id.* at 54:20-64:21; *Guitar Holding Co. v. El Paso Nat. Gas Co.*, 2010 WL 3338550, at *3–6 (W.D. Tex. Aug. 18, 2010) (A company's principal place of business is located at its "nerve center"—the place where its "officers direct, control and coordinate" its activities.). Mr. Babayi has directed his litigation campaign against EROAD and other defendants from his Washington D.C. home. Ex. F at 54:20-64:21. Conversely, Mr. Babayi has never been to the Eastern District of Texas. *Id*. Given that he is PDC's CEO and sole owner, Mr. Babayi will be a key witness in this litigation. Conversely, PDC appears not to have any witnesses residing in the Eastern District. Mr. Babayi almost certainly maintains relevant documents in his Washington D.C. home/office address. *Id.* at 5:15-17. PDC has identified no relevant documents in its Marshall, Texas office. Any judicial economy gained by transferring to the Eastern District is strongly outweighed by the factors favoring transfer to the District of Columbia. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

## V.   CONCLUSION

For the foregoing reasons, the Court should deny PDC's Rule 12(b)(3) Motion to Transfer on all grounds. Alternatively, if the Court deems transfer appropriate, it should transfer to the District of Columbia.

Dated:   April 19, 2019                           Respectfully submitted,


                                                  */s/ Michael J. Sacksteder*
                                                  Michael J. Sacksteder, CSB No. 191605 (admitted
                                                  in WD Texas)
                                                  Email: msacksteder@fenwick.com
                                                  Dargaye H. Churnet (admitted *pro hac vice*)
                                                  Email: dchurnet@fenwick.com
                                                  FENWICK & WEST LLP
                                                  555 California Street, 12th Floor
                                                  San Francisco, CA 94104
                                                  Telephone:    415.875.2300
                                                  Facsimile:    415.281.1350

                                                  Attorneys for Plaintiffs
                                                  EROAD Limited and EROAD Inc.




## CERTIFICATE OF SERVICE

        I hereby certify that all counsel of record are being served with a copy of the foregoing

document via the Court's CM/ECF system on April 19, 2019.


                                                   */s/ Raymond Pelayo*
                                                  Raymond Pelayo