IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **EROAD LIMITED and EROAD INC.**, *Plaintiff,* § § § § | |
| v. § | **CIVIL NO. 6:19-CV-00026-ADA** |
| § § | |
| **PERDIEMCO LLC,** § *Defendant.* | |

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Before the Court is Defendant PerDiemCo, LLC's ("PDC") Motion to Dismiss or Transfer Venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) filed on March 22, 2019. ECF No. 12. Based on the reasoning below, the Court **DENIES** Defendant's Motion.

### I. Procedural Background

Plaintiffs eRoad Ltd. and eRoad Inc. (collectively "EROAD") filed a declaratory judgment complaint against Defendant PerDiemCo, LLC on January 25, 2019. ECF No. 1. Defendant filed a Motion to Dismiss or Transfer Venue on March 22, 2019. Plaintiffs filed a response in opposition on April 19, 2019. ECF No. 18. Defendant filed a reply on April 26, 2019. ECF No. 20. Plaintiffs filed a supplement to Plaintiffs' response on July 12, 2019. ECF No. 28.

### II. Factual Background

PDC is a Texas limited liability company. ECF No. 12 at 1. PDC's Certificate of Formation was filed with the Secretary of State's office in Austin on April 13, 2015. ECF No. 18 at Ex. A. In its taxation submissions for 2016, 2017, and 2018 (also filed in Austin), it identifies a "principal place of business" in Alabama. ECF No. 18 at Exs. B, C, D. Not until March 4, 2019, after this

1

action was filed, did PDC submit anything to the State of Texas identifying an address or principal place of business in the Eastern District. ECF No. 18 at Ex. J. The Texas Secretary of State's website identified Mr. Babayi's Washington D.C. home/office address as PDC's address even after PDC filed its Motion. ECF No. 18 at Ex. E.

PDC was formed in the Western District as an LLC with three members: Mr. Babayi, Mark Roberts, and Darryl Diem. ECF No. 18 at Ex. A; Ex. F at 100:15–102:9. Mr. Roberts resides in Huntsville, Alabama, and Mr. Diem resides in Madison, Alabama. ECF No. 18 at Ex. F at 93:16–19, 35:13–18. Corporate meetings were conducted from Washington D.C. or Alabama during the time all three were owners of PDC. *Id*. at 34:12–39:7. Mr. Babayi is unaware of any corporate meetings conducted in the Eastern District of Texas. *Id*. at 34:12–39:7. By early summer 2018, both Mr. Roberts and Mr. Diem sold all their shares to Mr. Babayi, making him PDC's sole owner. *Id*. at 115:6–117:12.

There is no dispute that this declaratory judgment action arises from PDC's repeated threats of litigation against EROAD as part of PDC's patent licensing efforts targeting 10–12 companies. ECF No. 18 at Ex. F at 59:2–5. On July 12, 2018, PDC's outside counsel sent a letter to EROAD's CEO accusing EROAD of infringing on PDC's patents and threatening to seek damages. ECF No. 12–3. Mr. Babayi continued the threats of litigation in subsequent emails and telephonic communications with EROAD's counsel. ECF No. 18 at Ex. F at 54:20–64:21. Mr. Babayi conducted each of these communications from the Washington D.C. area. *Id*. None of the communications were conducted in or from the Eastern District of Texas. *Id*.

Defendant submits that as early as July 2018, Mr. Babayi was directing other litigation campaigns, one of which began with him sending a demand letter to a subsidiary of Trimble, Inc. ECF No. 18 at Ex. F at 54:20–64:21; Ex. G. The court in *Trimble* dismissed the case, finding that

2

PDC's alleged principal place of business in Marshall, TX was a sham, and consequently PDC failed to prove venue in the Eastern District of Texas was proper. *See Trimble Inc. v. PerDiemCo, LLC*, C.A. No. 19-CV-00526-JSW (N.D. Cal. July 8, 2019). Plaintiff has submitted at least one letter bearing PDC's letterhead identifying his Washington D.C. home/office address as PDC's address and his Virginia cell phone number as PDC's phone number. *Id.* It is undisputed that PDC has never had any employees in the Eastern District of Texas. *Id.* at 7:4–10. Nor have any contractors retained by PDC been based in that district. *See id*. at 43:15–44:23. PDC does not contend any documents are maintained in the Eastern District. *See* ECF No. 12. PDC has not developed any products in the Eastern District. Ex. F at 27:7–28:6. PDC's only purported product is an app that was developed in Alabama, and the app does not appear to have been updated since 2015. *Id.* at 27:7–28:6, 16:10–18:13; Ex. H.

The Court has carefully considered the evidence that the movants have proffered from the sworn testimony Mr. Babayi provided at this deposition. According to his testimony, Mr. Baybayi has never been to PDC's Marshall, Texas office. ECF No. 18 at Ex. F at 96:2–98:19. Mr. Baybayi has not been to the Eastern District of Texas. *Id*. While PDC may have an office in Marshall, it appears that it has been all but abandoned since PDC completed its previous Eastern District litigation in Spring 2018. *Id*. at 27:7–29:15. EROAD supplied evidence from at least one tenant in the building who averred that PDC's purported office has not been used for months. Collins Decl. at ¶ 6. A private investigator hired by EROAD's counsel observed that the office was vacant on consecutive weekdays, with a package under the door and a business card sticking out of the door both days. Collins Decl. at ¶ 4, 7. Upon contacting the person listed on the business card, the investigator learned that the card had been left more than six months ago—in September 2018. Collins Decl. at ¶ 9. Movants submit that although PDC's website lists a Marshall, Texas telephone

number for the company, that Marshall number is currently assigned to a cell phone that Mr. Babayi keeps with him in Washington D.C. ECF No. 18 at Ex. F at 66:15–67:21. There is no evidence that this phone (whose use was outside of the Eastern District) was for business purposes. Even when the Marshall phone number was previously assigned to a land line in the Marshall office, Mr. Babayi believes the line was forwarded either to his cell phone or to the cell phone of one of the Alabama-based co-founders. The location of the phone provides no real nexus to the Eastern District. *Id.* at 71:2–72:9.

### III.  Legal Standard

A party may move to dismiss based on improper venue pursuant to Rule 12(b)(3). FED. R. CIV. P. 12(b)(3). "Once challenged, the burden of sustaining venue lies with the plaintiff." *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 473 (W.D. Tex. 2016). "[T]he court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). If venue is improper, the Court has broad discretion to dismiss the case or, in the interest of justice, transfer the case to any district where venue is proper. 28 U.S.C. § 1406(a); *Caldwell v. Palmetto State Savs. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987).

**1.  Federal Rule of Civil Procedure 12(b)(3)**

A party may move to dismiss a claim for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For all civil actions that invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, venue is proper in  (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action

may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(1)–(3). If a case does not fall within one of the three provisions, venue is improper, "and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for the Western Dist. of Tex.,* 571 U.S. 49, 56 (2013). Once a defendant challenges venue, "the plaintiffs have the burden to prove that the chosen venue is proper." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 719 (W.D. Tex. 2013) (citation omitted). On a Rule 12(b)(3) motion to dismiss for improper venue, the court must view all the facts in a light most favorable to the plaintiff. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009). "Thus, a plaintiff may show that venue is proper by 'setting forth facts that taken as true would establish venue.'" *Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 719; *see also Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

**2. 28 U.S.C. § 1406**

As previously discussed, where venue is improper, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). This provision authorizes dismissal only where venue is "wrong" or "improper" in the forum in which it was brought. *Atlantic Marine,* 571 U.S. at 56. While the Fifth Circuit has articulated a factor-based test to help district courts determine whether to transfer pursuant to 28 U.S.C. § 1404(a), no such test exists explaining to a district court how it should determine whether to dismiss or transfer "in the interest of justice" pursuant to 28 U.S.C. § 1406(a). *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (explaining that a district court should balance public and private interest factors to determine whether to transfer pursuant to 28 U.S.C. § 1404(a)); *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.

2004) (same). However, the Supreme Court has explained that "Congress . . . recognized that 'the interest of justice' may require that the plaintiff not be penalized by . . . 'time consuming and justice-defeating technicalities.'" *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962) (holding that a court may transfer a case even where it lacks personal jurisdiction). Indeed, the *Goldlawr* Court concluded that § 1406 accords with the general purpose "of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on the merits," such as improper venue or lack of personal jurisdiction. *Id.* at 466–67. The Fifth Circuit has affirmed Section 1406 transfers based on the "interest of justice" because "witnesses, evidence, the underlying events, and both defendants are based there." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).

Notably, two venue transfer statutes exist: 28 U.S.C. §§ 1404 and 1406. The former permits a district court in which venue is proper to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(1). The latter permits a district in which venue is improper to either dismiss or transfer the case to a court where venue would otherwise be proper. 28 U.S.C. § 1406(a). *See Goldlawr Inc.,* 369 U.S. at 467. In the interest of justice, the established preference of courts is to deny dismissal of a case based on the procedural technicality of an improper venue. *See id.* One of the purposes of § 1406(a) is to remove "whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Id.* at 466–67. The decision to dismiss or transfer lies within the court's discretion. *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC,* 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012) (citing *Dubin v. United States,* 380 F.2d 813, 815 (5th Cir. 1967)).

A corporate defendant is "necessarily" subject to personal jurisdiction "in its place of incorporation." *Dillard v. Fed. Corp*., 321 F. Supp. 3d 752, 755 (W.D. Tex. 2018); *Auto-Dril, Inc.*

6

*v. Nat'l Oilwell Varco, L.P.*, 2016 WL 6909479, at *4 (W.D. Tex. Jan. 28, 2016) ("The defendant resides where the company is incorporated or its principal place of business."). Indeed, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'; they are unique and ascertainable. The rule affords plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Lowe v. MAC Fed. Credit Union*, 2018 WL 2422999, at *2 (W.D. Tex. May 29, 2018).

**3.  28 U.S.C. § 1404(a)**

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing good cause. *See Humble Oil & Ref. Co. v. Bell Marine Service, Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (*quoting* 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If this requirement is met, the Fifth Circuit Court of Appeals has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive

7

weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (*citing to Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

A plaintiff's selection of venue is entitled to deference. *Vasquez v. El Paso II Enterprises, LLC*, 912 F. Supp. 2d 445, 447 (W.D. Tex. 2012) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.")); *Stagecoach Puttters, LLC v. Taylor Made Golf Co., Inc.,* 2015 WL 11622483, at *2 (W.D. Tex. Jan. 26, 2015) (plaintiff's choice of forum is given "great deference").

Though given deference, courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. at 315.

### IV. Analysis

The Court first considers whether to dismiss for improper venue. The Court will then address whether the Eastern District of Texas is clearly more convenient than the Western District of Texas.

**1.  Motions to Dismiss for Improper Venue**

The Court first considers the parties' arguments. EROAD argues venue is proper because PDC is subject to personal jurisdiction in Texas under 28 U.S.C. § 1391(b) and § 1391(c). ECF No. 1 at 2. PDC argues in its motion PDC is subject to personal jurisdiction only in the Eastern District of Texas under 28 U.S.C. § 1391(d). ECF No. 12 at 12. PDC contends it only resides in the Eastern District of Texas because its principal place of business is located in Marshall, Texas. *Id.* EROAD responds by arguing PDC does not and has never had a principal place of business in Marshall, Texas. ECF No. 18 at 16. EROAD presents evidence that PDC's Marshall Office is merely a sham to effect venue in the Eastern District of Texas. *Id.* PDC's only response is to restate its principal place of business is in Marshall, Texas. ECF No. 20 at 4. EROAD later supplements its response by attaching a recent order from the Northern District of California in which the court refused to transfer the case to the Eastern District of Texas because PDC's self-proclaimed principal place of business was merely a façade. ECF No. 28, Ex. A. Considering the arguments and evidence presented, the Court examines the applicable law.

**A.  28. U.S.C. § 1391(c)(2).**

Considering the pleaded facts in the light most favorable to the non-movant, the following facts are considered for purposes of venue. PDC is a Texas limited liability company. ECF No. 1 at 2. At the time this action commenced, PDC had a sole member, Robert Babayi, who resided in Washington D.C. ECF No. 18, Ex. F. Mr. Babayi conducts, directs, and controls the company from

9

Washington D.C. *Id.* Mr. Babyi has never operated from the office in Marshall, Texas, has never conducted business in Marshall, Texas, and in fact has never traveled to Marshall, Texas. *Id.* at 93. PDC has never had employees in Marshall, Texas nor has it ever held a corporate meeting there. ECF No. 18 at 9–10.

The Supreme Court recently established that only a limited set of contacts with a forum will render a defendant subject to general jurisdiction there. *Daimler AG v. Bauman*, 134 S. Ct. 736, 760 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). A corporation is at home in its place of incorporation and principal place of business. *Id*. The place of incorporation and the principal place of business point plaintiffs to unique and ascertainable places and direct plaintiffs to at least one "clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id*. A corporation's principal place of business is where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz v. Friend*, 130 S. Ct. 1181, 1192 (2010). Because PDC's sole member, Mr. Babayi, conducts, directs, and controls PDC in Washington D.C., PDC's principal place of business is in Washington D.C. Applying these principles to the present case, PDC is subject to general jurisdiction because it is essentially at home in Texas and Washington D.C.[1] Therefore, because PDC is subject to personal jurisdiction in this District, venue under §1391(c)(2) is proper.

---

[1] Additionally, there is a compelling argument that just as a corporation is subject to personal jurisdiction in its state of incorporation, an LLC is subject to personal jurisdiction in its state of formation. *See Lowe v. MAC Fed. Credit Union*, 2018 WL 2422999, at *2 (W.D. Tex. May 29, 2018); *see also Carruth*, 2015 WL 6506550, at *7 (W.D. Tex. Oct.26, 2015); *Bustos*, 2012 WL 12882897, at *5 (W.D. Tex. May 18, 2012).

### B.  28 U.S.C. § 1391(d)

Defendant argues 1391(d) applies in this case because Texas is a multi-district state.[2] Neither the Supreme Court nor the 5th Circuit has settled the issue of whether the term "corporation" in § 1391(d) includes unincorporated entities like PDC.[3] It is not necessary for the Court to address that issue in this case.

Even if § 1391(d) applies, venue is proper in the Western District of Texas. PDC argues venue is only proper in the Eastern District of Texas because its principal place of business is in Marshall, TX.  ECF No. 12 at 12. EROAD, however, offered evidence PDC's assertion is false. ECF No. 18 at 2–10. Because PDC's principal place of business is in Washington D.C., not Marshall, TX, the Court must evaluate under § 1391(d) which district in Texas PDC has the most significant contacts in. PDC does not manufacture, conduct business, or employ any persons in Texas. Its only contact with Texas outside of its formation is the leased office in Marshall, TX. The Court does not consider the Marshall office for the purpose of effecting venue. ECF No. 28, Ex. A at 11. *See In re Microsoft Corp.*, 620 F.3d 1361, 1364–65 (Fed. Cir. 2011) (offices that "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue" does not factor into transfer analysis). The only significant contact PDC has with Texas is the company's formation in the Western District of Texas. Just as a corporation is subject to general personal jurisdiction in its place of incorporation

---

[2] "[I]n a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts." 28 U.S.C. § 1391(d).

[3] On the face of the venue statute, there seems to be a question whether Section 1391(d) applies to unincorporated associations. Though PDC is not a corporation, courts have applied Section 1391(c)'s venue provisions by analogy to unincorporated associations such as LLCs. *See Henry v. Bush Lewis, PLLC*, 2009 WL 10693534, *2 (S.D. Tex. 2009); *see also* 14D Wright, Miller, & Cooper, *Federal Practice and Procedure*, Unincorporated Associations § 3812, at 348 (4th ed. 2019). Therefore, if PDC is treated like a corporation for purposes of venue, 1391(d) requires the Court to determine if PDC is subject to personal jurisdiction in the Western District of Texas.

and principal place of business, so too should a limited liability company. *See Daimler*, 571 U.S. at 128 (holding that "with respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction;' they are unique and easily ascertainable, and afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims."); *see also* 14D Wright, Miller, & Cooper, *Federal Practice and Procedure*, Unincorporated Associations § 3812, at 348 (4th ed. 2019). Therefore, PDC is subject to personal jurisdiction in the Western District of Texas. As such, under 28 U.S.C. § 1391(d), venue is proper in the Western District of Texas.

2.  **Motion to Transfer**

PDC cannot show that venue is improper in this district under 28 U.S.C. 1391. *See* ECF No. 12 at 6 (PDC concedes that the present "action for declaratory judgment alleging non-infringement is governed by the general venue statute, 28 U.S.C. § 1391."). Therefore, the Court does not consider whether to transfer the case to an alternate venue under 28 U.S.C. 1406.

The final issue is whether transfer would be appropriate under a different statute. 28 U.S.C. § 1400(b) is a patent infringement-specific venue statute which provides that a "civil action for patent infringement may be brought in the judicial district where the defendant resides." This venue statute applies to an affirmative action seeking relief for patent infringement. *Gesco Int'l Inc. v. Luther Med. Prod. In*c., 1990 WL 505456, at *2 (W.D. Tex. June 26, 1990). This suit, however, is a claim for declaratory relief. Therefore, the more proper analysis falls under 28 U.S.C. § 1391. *See U.S. Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195 (9th Cir.) (1982) (holding venue in a declaratory judgment action for patent noninfringement and invalidity is governed by the general venue statute, not the special patent infringement statute); *Emerson Electric Co. v. Black and Decker Manuf. Co.*, 606 F.2d 234, 238 (8th Cir. 1979) (same).

PDC argues incorporation in a state comprising of multiple districts does not establish venue in every district of the state under § 1400(b). *Id.* at 7–8. This argument is irrelevant. PDC's reliance on *In re BigCommerce, Inc.* is misplaced at best. The court in *BigCommerce* appropriately distinguishes the patent venue statute, which limits proper venue to a *single* district, from the general venue statute, which provides that venue may be proper in *multiple* districts. *In re BigCommerce, Inc.*, 890 F.3d 978, 984 (Fed. Cir. 2018) ("It is also evident from the general venue rules at the time that when Congress wanted venue to potentially lie in multiple judicial districts, it said so clearly. . . . The lack of similar language in § 1400(b) indicates that Congress did not intend for residence to include all judicial districts.").

Even if §1400(b) applies to the question of propriety of venue, the facts do not support transfer. The relevant time for any venue analysis is the time of filing of the complaint. *Tesoro Ref. & Mktg. Co. LLC v. C.A.R. Enterprises, Inc.*, 2018 WL 6050603, at *2 (W.D. Tex. Nov. 19, 2018); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 WL 5315206, at *2 (E.D. Tex. Oct. 26, 2018. At the time EROAD filed its complaint, PDC had not used the Marshall office in many months, if ever. Collins Decl. at ¶ 4, 6, 9; Ex. F 96:2–98:19. The evidence sufficiently establishes that for all practical purposes, Mr. Babayi was conducting the company's business from his home or office in Washington D.C. Ex. F at 54:20–64:21. EROAD contends PDC's Marshall office was merely a sham.[4] Weighing the evidence in light most favorable to the non-movant, it appears as though the office was established for little or no other reason than to create venue for litigation. Courts do not factor offices created as a façade merely for the purpose of creating venue. *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011); *Hertz Corp. v. Friend*, 559 U.S. 77,

---

[4] Similarly, the court in *Trimble, Inc. v. PerDiemCo, LLC* found PDC's Marshall Office was merely a façade. *See* C.A. No. 19-CV-00526-JSW (N.D. Cal. July 8, 2019).

13

97 (2010). Thus, the evidence in this case supports EROAD's argument the office existed merely as a front to create venue in the Eastern District of Texas.

The Court turns next to PDC's argument that its "sole connection with this District is that its registered agent for service of process is located in Austin, a division of this District." ECF No. 12 at 9. PDC's argument is unpersuasive. PDC is a Texas limited liability company formed by filing a Certificate of Formation with the Secretary of State in this District. Under the facts of this case, PDC's most substantial contacts in Texas is in the Western District.

### 3. Motion to Transfer Under Section 1404(a).

The Court turns to the alternative request for transfer under § 1404(a) to the Eastern District of Texas based on convenience. The movant must establish the desired venue is clearly more convenient. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."); *21st Century Fin. Servs., LLC v. Manchester Fin. Bank*, 2012 WL 12883044, at *1 (W.D. Tex. June 29, 2012) ("Courts generally give great deference to the plaintiff's choice of forum"). PDC has not and cannot establish that the Eastern District is clearly more convenient than this District.

Upon a close examination of the actual status of PDC's activities in the Eastern District, the private interest factors do not weigh in favor of transfer. Mr. Babayi, PDC's CEO and sole member, has never been to the Marshall, Texas office that PDC contends is its principal place of business. Ex. F at 96:2–97:19. There is no evidence at the time this complaint was filed that any of PDC's employees resided in Marshall or anywhere else in the Eastern District. Based upon the evidence pleaded, PDC's office does not support transfer for convenience. *See Microsoft* at 1361, 1364-65 (Fed. Cir. 2011) (offices that "staffed no employees, were recent, ephemeral, and a

construct for litigation and appeared to exist for no other purpose than to manipulate venue" does not factor into transfer analysis); *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010) (party cannot manipulate venue by relying on a purported principal place of business that is "a bare office with a computer"). Additionally, Mr. Babayi directs, controls, and coordinates PDC's activities from his Washington D.C. home/office and communicates with approximately a dozen licensing entities, including EROAD, from there. *Id.* at 54:20–64:21; Ex. G. Mr. Babayi's home address was also a registered PDC address at the time this suit began. Ex. F at 5:15–17; Ex. E. Both of PDC's former co-owners, whom Mr. Babayi alleges still work in a consulting role for PDC, reside in Alabama. Both former co-owners worked on developing PDC's sole "product" there and have not done any recent work in the Eastern District of Texas. Ex. F at 93:16-19, 35:13–18. There is no record of PDC having other employees. *Id.* at 7:5–23.

The remaining question is whether "public interest" factors favor transfer. Court congestion in this District and the Eastern District is at most relatively the same and likely more favorable in the Western District of Texas, Waco Division. PDC does not contend this factor weighs in favor of transfer. This Court has been able to set most, if not all, patent cases for trial within 12 months after conducting the Markman hearing, or roughly within 18 months after the case was filed. At a minimum, any administrative difficulties caused by court congestion are no less likely in the Eastern District than in this District. *See Davidson v. Ascension Health Long Term Disability Plan*, 2017 WL 8640929, at *9 (W.D. Tex. Feb. 1, 2017) (finding this factor neutral when one district had more case filings and the other had a shorter time to disposition).

The remaining public interest factors—the local interest in having localized interests decided at home, the familiarity of the forum with the law that will govern the case, and the avoidance of unnecessary problems of conflict of laws of the application of foreign law—also do

15

not weigh in favor of transfer, nor does PDC contend that they do. *See Truelove v. Texas Dep't of Criminal Justice*, 2019 WL 422661, at *4 (W.D. Tex. Feb. 3, 2019) (finding the public interest factors neutral when neither party argued that they weighed in favor of transfer).

PDC contends instead that litigating in this district would "waste judicial resources" because the Eastern District has purportedly dealt with the patents at issue in this case in previous cases brought by PDC, none of which involved EROAD. ECF No. 12 at 17. The Court rejects this argument. PDC prosecuted at least two previous cases in the Eastern District: *PerdiemCo LLC v. GPS Logic LLC*, No. 2:15-cv-1216 and *PerdiemCo LLC. v. IndusTrack LLC*, No. 2:15-cv-00727. *Id.* at 11–17. None of the patents at issue in this case were at issue in those cases. ECF No. 12 at 14; *PerdiemCo LLC v. GPS Logic LLC*, No. 2:15-cv-1216, ECF No. 14; *PerdiemCo, LLC. v. IndusTrack LLC*, No. 2:15-cv-00727, ECF No. 1.

None of the most important judicial steps were taken with respect to any of the patents at issue in this case. No claim terms have been construed in the Eastern District. *See PerDiemCo LLC v. Geotab Inc. et al*., No. 2-16-cv-01203; *see also PerDiemCo LLC v. Telular Corp. et al.*, No. 2-16-cv-01408. No expert reports for the patents at issue in this case have been exchanged in the Eastern District. *Id*. Obviously, no motions for summary judgment were filed and resolved in the Eastern District. There was no trial involving the relevant patents. Of substantial relevance to the issue of the investment of judicial resources with respect to the proper venue for this case, counsel for EROAD avers that PDC's counsel informed EROAD's counsel that it does not intend to assert a claim alleging infringement of any PDC patent that has been subject to an instituted IPR. Sacksteder Decl. at ¶ 13. The '471, '314, and '113 patents all fall into that category and thus are unlikely to be at issue in this case going forward. *See* IPR2017-00969, IPR2017-00968, and IPR2017-00973; Sacksteder Decl. at ¶ 13. Therefore, PDC's arguments in support of its motion

are unpersuasive. *See Nova Nilla Entm't, LLC v. Players Nightclub, LLC*, 2018 WL 4955221, at *7 (W.D. Tex. Oct. 12, 2018) (denying transfer where all but one factor was neutral, and the factor slightly favoring transfer did not clearly weigh in favor of transfer).

PDC has identified no specific factors weighing in favor of transfer to the Eastern District beyond the fact that some of its patents have been litigated to some extent in the Eastern District. This is insufficient to merit transfer given the difference in which patents were asserted. In summary, the mere existence of prior patent litigation cannot and does not overcome the deference accorded to Plaintiff's choice of forum in addressing whether the Eastern District is "clearly more convenient" than this District. *Permian Basin Petroleum Ass'n v. Dep't of the Interior*, 2015 WL 11622492, at *5 (W.D. Tex. Feb. 26, 2015) (where judicial economy was the only factor weighing in favor of transfer, "and the remaining factors are neutral, the Court finds Defendants have not shown good cause and the transferee venue is not clearly more convenient."). PDC failed to persuade the Court that the private and public interest factors clearly weigh in favor of transfer.

## V. Conclusion

Based on the foregoing, venue is proper in the Western District of Texas. Defendant's Motion to Dismiss and Motion to Transfer is **DENIED**. This case will remain assigned to the docket of the Honorable Alan D Albright.

**SIGNED** this 19th day of September 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE